UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                        CASE NO.: 25-cr-60068-Smith/Hunt

v.

DANIEL DAVID RODRIGUEZ,

    Defendant.
_____/

## OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

COMES NOW, the Defendant, Daniel David Rodriguez ("Mr. Rodriguez") by and through counsel, and pursuant to Rule 32, Federal Rules of Criminal Procedure objects to the Presentence Investigation Report ("PSR") [DE37] as stated specifically herein, and states as follows in support:

## LEGAL STANDARD FOR OBJECTIONS

1. Rule 32, Federal Rules of Criminal Procedure provides that a criminal defendant may object to "material information, sentencing guideline ranges, and policy statements contained in or omitted from" the PSR, which objections must be set forth "in writing". *See* Fed. R. Crim. P. 32(f)(1) (2023).

2. Such objections may be "factual" or "legal" in character. With respect to "legal" objections: "the defendant may object to the *applicability* of a particular sentencing enhancement, and the government then "bears the burden of proving the applicability of the sentencing enhancement by a preponderance of the evidence." *See United States v. Williams*, 661 Fed. Appx. 616 (11th Cir. 2016).

1

3. Where a defendant makes a "factual objection" the government: "bears the burden of establishing the disputed fact." *See United States v. Thomas*, 32 F. 4th 1073 (11th Cir. 2022).

4. In either event, the Government may satisfy its burden of proof only by "reliable and specific evidence" that establishes the facts "by a preponderance of the evidence." *See United States v. Cruz*, 2011 U.S. Dist. LEXIS 149897 (M.D. Fla. Dec. 30, 2011). *See United States v. Bey*, 627 Fed. Appx. 775 (11th Cir. 2015) (The government must prove a contested fact in the PSR that would increase a defendant's sentence by a preponderance of the evidence. The government must satisfy this burden with 'reliable and specific' evidence.").

5. Additionally, the stated purpose of Rule 32, is "to ensure that the district court can meaningfully exercise its sentencing authority based on a complete and accurate account of all relevant information." *See United States v. Young*, 767 Fed. Appx. 766 (11th Cir. 2019).

6. In order to fulfill this purpose, a defendant's objections must be made "with specificity and clarity in order to alert the government and the district court to the mistake of which the defendant complains." *See United States v. Ramirez-Flores*, 743 F. 3d 816 (11th Cir. 2014).

## **SPECIFIC OBJECTIONS**

7. Mr. Rodriguez makes a legal objection to ¶ 42, which imposes a five-level increase under U.S.S.G. § 2G2.2(b)(7)(D) for possession of six hundred images or more of child pornography. [DE37 ¶ 42].

8. Mr. Rodriguez also makes a factual objection to ¶ 42, to the extent that it alleges possession of **2,227** images. [DE37 ¶ 42]. Mr. Rodriguez actually possessed fifty-two (52) images, and twenty-nine (29) videos, for a total of eight one (81).

2

9. Mr. Rodriguez makes a legal objection to ¶ 40 because it constitutes impermissible "double counting" where Mr. Rodriguez has pleaded guilty to, and been assessed a base offense level, based on "distribution" of child pornography materials.

10. Mr. Rodriguez objects to ¶ 41 because "use of a computer" in 2025 is inherent to the times.

## MEMORANDUM OF LAW

### I.   THE IMAGE ENHANCEMENT [2G2.2(b)(7)(D)] AFTER *DUPREE*

Prior to the United States Supreme Court's decision in *Kisor v. Wilkie*,[1] Courts across the country gave so-called *Auer* deference to the commentary in the United States Sentencing Guidelines ("USSG"). *See United States v. Dupree*, 57 F. 4th 1269, 1274 (11th Cir. 2023). In *Kisor*, "the Supreme Court examined *Auer* deference in the context of an administrative agency's interpretation of one of its regulations." *Dupree*, 57 F. 4th at 1274. The Court concluded that an agency plays an important role in "construing" regulations but also clarified that such "construction" is necessary "only if a regulation is genuinely ambiguous." *Id.* at 1275. "If uncertainty [or ambiguity] does not exist after applying [traditional] tools [of construction] there is no plausible reason for deference" and the court is required to apply the plain meaning of a statute or regulation – regardless of an agency's own interpretation, and without considering whether such interpretation is reasonable. *Dupree*, 57 F. 4th at 1275 (discussing *Kisor*, 139 S. Ct. at 2778).

In addition to summarizing the *Kisor* decision, the Eleventh Circuit in *Dupree* expressly applied that decision to the USSG. *Dupree*, 57 F. 4th at 1275 ("We fail to see how [the *Kisor* opinion] does not apply to the Sentencing Guidelines."). Since that time, various provisions of the commentary to the USSG have been challenged, and the so called 1:75 conversion of "videos" to

---

[1] 139 S. Ct. 2400 (2019).

3

"photographs" in application note 6 to U.S.S.G. § 2G2.2(b)(7) is no exception. Although various decisions have discussed whether a court must *defer* to the application note, and apply the conversion formula set forth therein, Mr. Rodriguez submits that *United States v. Roberts*, is the most persuasive opinion. 2025 U.S. Dist. LEXIS 114613 (E.D. Va. Jun. 16, 2025).

In *Roberts*, the District Court found that the term "image" in U.S.S.G. § 2G2.2(b)(7) is <u>not ambiguous</u>. *Roberts*, 2025 U.S. Dist. LEXIS 114613 at *56-57. Accordingly, the court must apply its plan meaning. *Id.* In reaching this conclusion, the court engaged in an exceedingly lengthy analysis. *Id.* at *25-57. The court commenced its analysis by considering the plain language of the provision at issue: U.S.S.G. § 22.2(b)(7)(A)-(D), which in each provides a particular enhancement for a certain number of "<u>images</u>". *Roberts*, 2025 U.S. Dist. LEXIS 114613 at *25 (emphasis original). Apart from one other single subdivision, this is the "only place where the Guidelines themselves – excluding the commentary – use the term images" and the guidelines do not contain a definition of the term "images" outside of the commentary. *Id.*

When a statute does not define a term "courts must endeavor to accord the term its ordinary meaning"; in doing so, the *Roberts* court stated:

> Nowhere in the text of the statute nor in the text of the image enhancement did Congress or the Commission provide any evidence of an intention to differentiate between a picture or photograph and a video for the purposes of criminalizing the possession of one "image" of child pornography. Furthermore, nothing in the text of the statute or image enhancement suggests that Congress or the Commission intended to differentiate punishment depending on the length of the video, the abuse depicted therein, or the number of victims or abusers present. Congress knows how to write legislation. It could have defined these terms differently when crafting the statute and when crafting the image table itself. It could have said that one "image" means one picture of child pornography and that each separate scene or frame or 30 second video, for example, in a video equals one image of child pornography. But it did not do so. It equated, by equally listing them, one picture or one photograph, with one video. . . .. Altogether, the terminology in the statute and image enhancement, as well as how that terminology is used, demonstrates an <u>unambiguous</u> meaning for the term "image" – that one image, for the purposes of

4

>   the image sentencing enhancement, means one picture, one photograph, one film, one computer-generated image, and one video.

*Roberts*, 2025 U.S. Dist. LEXIS 114613 at *30-31 (emphasis original). Because the text of the Guideline is not ambiguous, the court need not reach the advisory committee notes to "interpret" it. Instead, it is duty bound to apply the statute and treat each "video" or "photograph" as an "image." Doing so, Mr. Rodriguez possessed only eighty-one (81) "images". He should be given only a two-level increase, under U.S.S.G. § 2G2.2(b)(7)(A), accordingly.

Mr. Rodriguez notes that even *if* this Court finds that the language in the enhancement is ambiguous, it should still refuse to apply the 1:75 ratio because it is unreasonable. *See Roberts*, 2025 U.S. Dist. LEXIS 114613 at *57-58. The *Roberts* reasoning in this regard is also highly persuasive. In that respect, the *Roberts* court emphasized that although the Commission took public commentary regarding the interpretation of the term "image," "the Commission seems to not have provided any reasoning for its interpretation that one video equals 75 images for the purpose of the image enhancement". *Id.* at *61-62. The *only* rational provided by the Commission is that "75 images" per one video is "squarely in the middle of the two-level increase range." *Id.* The Court did not (nor should this court) find such interpretation reasonable because:

>   "[First] the Commission interpretation is just plain <u>wrong</u> as to mathematics [because] 75 is <u>not</u>, as the Commission states, "squarely in the middle of the 2-level increase rang". The "2-level increase range" enhances a defendant's Base Offense Level by two points when they possess between <u>10 and 150 images</u> (technically between 10 and 149) However, under the Commissions justification, it would have interpreted image to equal <u>70 images</u> (technically, 69.5) rather than 75 images in the video context because the exact midpoint between 10 and 150 is 70, not 75. . . . Second, and perhaps more importantly, even had the Commission's interpretation been mathematically accurate (70, rather than 75 images per video), the ratio lacked any record or analytical support. To put it simply, the Commission provided no real <u>reasoning</u> for its conclusion that one video equals 75 images. The fact that the number 75 is "squarely in the middle" of one of the prescribed enhancement ranges is meaningless to what Congress intended "image" to mean in the video context. . ... For these reasons, the Court concludes [as a Sixth Circuit Court of Appeal judge did] that the Commission's 75:1 ration does not fall "within the bounds of

5

  reasonable interpretation" of the enhancement. Because that interpretation is unreasonable, the Court cannot defer to the commentary.

*Roberts*, 2025 U.S. Dist. LEXIS 114613 at *63-64 (emphasis original). It should be noted that while there are several Eleventh Circuit Court opinions related to the issue, the undersigned has not found any *binding* precedent that would dictate a contrary result to *Roberts*. *See e.g., Goodson v. OS Rest. Servs., LLC*, 2017 U.S. Dist. LEXIS 71923 (M.D. Fla. May 11, 2017) ("The law is clear that (1) only the decisions of the Supreme Court and U.S. Court of Appeals for the Eleventh Circuit are binding on the district courts of the Eleventh Circuit; and (2) unpublished opinions are not considered binding precedent – although they may be cited as persuasive authority.").[2]

Given the foregoing, Mr. Rodriguez objects to the five level increase pursuant to U.S.S.G. § 2G2.2(b)(7)(D), because (1) it is factually inaccurate, since Mr. Rodriguez did not possess 600 or more images, as that term must be applied; and (2) legally, the statute is either (a) unambiguous, or (b) even if ambiguous, the Commissions interpretation in the 1:75 ratio rule is unreasonable.

## II. U.S.S.G. § 2G2.2(b)(3)(F) ENHANCEMENT IS "DOUBLE COUNTING"

Additionally, Mr. Rodriguez objects to the two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F). This enhancement provides for a two-level increase where "the defendant knowingly engaged in distribution, other than distribution described in subdivisions (A) through (E) [above]." *See* U.S.S.G. § 2G2.2(b)(3)(F). "Impermissible double counting occurs only when

---

[2] *See United States v. Peralta*, 2024 U.S. App. LEXIS 27422 (11th Cir. Oct. 29, 2024) (discussing in an unpublished opinion, without significant analysis whether the district court properly "relied on the commentary" in applying the 1:75 ration rule); *United States v. Carmody*, 2023 U.S. App. LEXIS 28315 (11th Cir. Oct. 25, 2023) (discussing in an unpublished opinion, without significant analysis whether the district court was "reasonable" in relying on the 1:75 ration in the commentary and ultimately concluding that *even if* the reliance was not "reasonable" and the commentary is not entitled to "deference" the defendant's sentence was "procedurally reasonable" which caused the court to affirm); *United States v. Vandyke*, 2024 U.S. App. LEXIS 3017 (11th Cir. Feb. 9, 2024) (finding in an unpublished opinion, without significant analysis, that the "images" term in U.S.S.G. § 2G2.2(b)(7) are "ambiguous" but not reaching the issue of whether the interpretation is 'reasonable'); *United States v. Blanc*, 2025 U.S. App. LEXIS 7063 (11th Cir. Mar. 27, 2025) (noting that defendant made arguments related to the 1:75 ratio, and recognizing a divided landscape on the issue, nationally, but finding that "given the uncertain legal landscape about the 75:1 ration prescribed by the commentary . . . [the Defendant] cannot show that any error committed by the district court was plain.").

one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another pat of the Guidelines." *See United States v. Dancer*, 509 Fed. Appx. 915 (11th Cir. 2013). A defendant can prove double counting by showing that the Sentencing Commission did not intend that "each guideline section in question concern conceptually separate notions related to sentencing." *Id.*

In this case, Mr. Rodriguez pleaded guilty to "distribution of child sexual abuse material" in violation of 18 U.S.C. § 2552(a)(2). [DE37 ¶ 1]. As applied in this case, the elements of this offense necessarily require proof that the defendant distributed child pornography. *See* 18 U.S.C. § 2552(a)(2) (criminalizing the knowing receipt or distribution of child sexual abuse material). The sentencing guidelines also specifically account for a <u>higher</u> offense level, where the offense of conviction is *not* 18 U.S.C. § 1466A(b) (criminalizing possession of a visual depiction of a minor engaged in sexually explicit conduct); § 2252(a)(4) (criminalizing possession of content which contain visual depictions of minors engaged in sexually explicit conduct); § 2252A(a)(5) (criminalizing knowing possession or access to materials that contain images of child pornography); or § 2252A(a)(7) (criminalizing distribution of child pornography that is adapted or modified to depict a minor).

Stated inversely, the guidelines punish "distribution" offenses <u>more harshly</u> by establishing a base offense level that is <u>four levels higher</u> than other similar offenses that may fall under the umbrella of U.S.S.G. § 2G2.2. The guidelines, then, account for distribution – except where there are certain aggravating factors – and a further enhancement on the same grounds is double counting. Notably, the same is not true with respect to enhancements under U.S.S.G. § 2G2.2(b)(3)(A) – (E), because these enhancements add an element of "value" received; add an element related to the type of individual who received the content; or otherwise add a different

intention (i.e., to induce the minor). The same is not true of (F), which applies in a blanket fashion if the defendant "knowingly engaged in distribution" – precisely what he has already been given a base level of 22 (rather than 18) for.

For this reason, Mr. Rodriguez objects to the enhancement under U.S.S.G. § 2G2.2(b)(3)(F).

### III.   U.S.S.G §2G2.2(b)(6) IS INHERENT OF THE TIMES

The Defendant also objects to the application of U.S.S.G. §2G2.2(b)(6), which increases the offense level by two levels for "use of a computer."

This enhancement was first introduced in 1996, when computer use in child pornography offenses was comparatively novel and materially distinguishable from other means of possession or distribution (e.g., Polaroid photographs, magazines, or physical film). At that time, Congress and the Sentencing Commission intended the enhancement to address an emerging technological capability that made child pornography more accessible and distributable than traditional mediums.

In 2025, however, virtually all child pornography offenses necessarily involve a computer or electronic device, as virtually no one consumes or stores such material via Polaroids, magazines, or 35mm film. Application of the enhancement therefore does not serve to distinguish this defendant's conduct from the mine-run of cases. As the Second Circuit noted in *United States v. Dorvee*, 616 F.3d 174, 187–88 (2d Cir. 2010), and as multiple courts have since echoed, the enhancements in §2G2.2 (including the computer-use enhancement) often apply in nearly every case, resulting in "irrational" and unduly harsh sentencing ranges that fail to differentiate among offenders.

Accordingly, the use of a computer is inherent in the offense in the modern era and adds no probative value in assessing culpability, dangerousness, or offense seriousness. Application of this

enhancement results in unwarranted uniformity and double counting. *See* also *United States v. Henderson*, 649 F.3d 955, 964–65 (9th Cir. 2011) (criticizing enhancements that apply in virtually every case).

For these reasons, the Defendant respectfully requests that the Court sustain this objection, decline to apply the §2G2.2(b)(6) enhancement, and calculate the Guidelines without the two-level increase.

## CONCLUSION

WHEREFORE Mr. Rodriguez respectfully requests this Court: (1) <u>sustain</u> the objections set forth herein; and (2) <u>order</u> that the advisory guideline range shall be determined as follows:

| U.S.S.G Provision | Sentencing Points |
|---|---|
| U.S.S.G. § 2G2.2(a)(2) [Base Offense Level] | 22 |
| U.S.S.G. § 2G2.2(b)(2) [Age of Minors Depicted] | +2 |
| ~~U.S.S.G. § 2G2.2(b)(3)(F) [Distribution Offense]~~ | ~~+2~~ |
| ~~U.S.S.G § 2G2.2(b)(6) [Use of Computer]~~ | ~~+2~~ |
| ~~U.S.S.G. § 2G2.2(b)(7)(D) [600 + Images]~~ | +5 (+2) |
| U.S.S.G. § 3E1.1(b) and (a) [Acceptance of Responsibility] | -3 |
| Total Offense Level | ~~30~~ (23) |
| ~~Recommended Advisory Range~~ | ~~97–121 months~~ |

Total Offense Level [After Objections]: ~~25~~ 23
**New Guideline Range:** ~~57–71 Months~~ **46-57 Months**

Respectfully submitted,

RICHARD A. MERLINO, P.A.  
1212 East Broward Boulevard, #300  
Fort Lauderdale, Florida 33301  
Telephone: 954-467-8989  
E-Mail: richmerlinoesq@gmail.com  

By: */s/ Richard A. Merlino*  
    Richard A. Merlino  
    Florida Bar: 0977640

JOSHUA S. DANZ, P.A.  
500 East Broward Boulevard, #1710  
Fort Lauderdale, Florida 33394  
Telephone: 954-998-1234  
Email: joshua@danz-law.com  

By: */s/ Joshua S. Danz*  
    Joshua S. Danz  
    Florida Bar: 98923

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion has been electronically filed and served via EM/ECF on this 3rd day of October 2025.


By: *Richard A. Merlino*                                           By: *Joshua S. Danz*
    Richard A. Merlino, Esq.                                          Joshua S. Danz, Esq.